FILED

03 MAR 12 AM 10:16

DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAR 1 2 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel* PAMELA COLBERT, ) ) ) ) | |
| Plaintiff, ) ) ) | |
| vs. ) ) | Civil Action Number 01-C-0292-S |
| BLUE CROSS AND BLUE SHIELD OF ALABAMA and HEALTHSOUTH CORPORATION, ) ) ) ) ) | |
| Defendants. ) | |

### MEMORANDUM OPINION ON HEALTHSOUTH'S MOTIONS TO DISMISS

In this *qui tam* action, Plaintiff/Relator Pamela Colbert asserts claims against her former employer, Blue Cross and Blue Shield of Alabama ("Blue Cross"), and HealthSouth ("HealthSouth") Corporation for violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and its "whistle-blower" provision, 31 U.S.C. §3730(h). Plaintiff alleges that these Defendants conspired to defraud the United States: 1) by firing her because of her whistle-blowing activities and in an effort to hobble Blue Cross' Medicare Fraud and Abuse Department's investigation of HealthSouth, and 2) by allowing or paying false and/or fraudulent claims. (Compl. at pp. 26-28.) Plaintiff further alleges that HealthSouth conspired with Blue Cross to pretextually terminate her employment because of her whistle-blowing activities. (*Id.*) Finally, Plaintiff asserts against HealthSouth a claim for tortious interference with her Blue Cross contractual relationship. (Doc. 42, First Amended Compl.)

53

On the Plaintiff's motion and with the consent of the United States, the Court has dismissed with prejudice all of Plaintiff's claims against Blue Cross. (*See* Docs. 41, 47.)

HealthSouth has moved the Court to dismiss all of the Plaintiff's remaining claims. For the reasons stated herein, the Court concludes that the motion is due to be granted, except for the tortious interference claim.

### I. PLAINTIFF'S ALLEGATIONS [1]

Plaintiff alleges that Blue Cross violated the False Claims Act by defrauding, and conspiring to defraud, the United States through false and fraudulent charges under the Medicare program. (Compl. at ¶ 26.) According to Plaintiff, Blue Cross allows HealthSouth and other health care providers to present false claims for Medicare reimbursement in order to further Blue Cross' private interests. HealthSouth is a Delaware corporation with its principal place of business in Birmingham, Alabama. HealthSouth is the nation's largest provider of physical therapy.

The Health Care Financing Administration ("HCFA") is the branch of the United States government that administers the Medicare program. As a Alabama Medicare Contractor for the HCFA, Blue Cross is obligated, *inter alia*, to investigate and remedy fraud and abuse by entities, such as HealthSouth, that receive funds from the Medicare program. In addition to its duties as the Alabama Medicare Contractor, Blue Cross is also the Fiscal Intermediary assigned to

---

[1] On a motion to dismiss, the allegations in the "complaint must be taken as true and construed in the light most favorable to the plaintiff." *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1325 (11th Cir. 2002).

administer and review HealthSouth's Medicare billings nationally. In spite of these oversight responsibilities, Blue Cross maintains substantial independent business arrangements and interests with HealthSouth. In many sections of the United States, Blue Cross has been the Administrator for HealthSouth's employee benefits plans. Thus, according to Plaintiff, Blue Cross has been unwilling to jeopardize its relationships with HealthSouth by fully pursuing investigations of alleged HealthSouth Medicare fraud and abuse. (Compl. at p. 2.)

As a result of HCFA's review of Blue Cross' performance deficiencies, in July 1997, Blue Cross hired the Plaintiff, who is a lawyer, as its Manager of Medicare Fraud and Abuse. Upon assuming this position, Plaintiff vigorously pursued Blue Cross' investigations of fraud and abuse. (*Id.* at pp. 12, 13.)

A few months after the Plaintiff assumed her position with Blue Cross, HealthSouth's physical therapy facilities were referred to Plaintiff's department for what appears to have been a full investigation at the local level. In the process of investigating HealthSouth, however, Plaintiff proposed to HCFA that HealthSouth's Medicare billings be investigated on a nationwide basis. (*Id.* at pp. 14, 15.) The proposal was accepted by HCFA and the ensuing two-year investigation uncovered widespread, extreme, and rampant Medicare fraud by HealthSouth. (*Id.* at pp.15, 16.) As a result of this investigation, Blue Cross suggested that approximately 50% to 90% of HealthSouth's Medicare claims should be denied. In addition, Blue Cross suggested that HealthSouth should be criminally prosecuted for the false claims. (*Id.*)

Consequently, Plaintiff referred the matter to the Office of Inspector General ("OIG"), the department which investigates Medicare fraud and abuse for potential prosecution by the United States Attorney. Plaintiff cooperated with the OIG investigation, as well as a parallel

investigation of HealthSouth by the Department of Justice ("DOJ"). (*Id.* at p.16.)

In March 2000, HealthSouth became aware of Plaintiff's involvement with the OIG and DOJ investigations. Realizing the likelihood of serious civil and criminal fraud charges, HealthSouth began to interfere with Blue Cross' investigations. For example, HealthSouth engaged in various efforts to discredit the Plaintiff. These efforts to stifle and impede the investigations culminated in Blue Cross' May 2000 discharge of Plaintiff. (*Id.* at p. 17.)

Blue Cross claimed, however, that it had terminated Plaintiff for resume fraud. When Plaintiff applied for employment with Blue Cross, she did not indicate on her application forms that she had worked for HealthSouth: she had worked as a HealthSouth "merger and acquisitions" lawyer for eight weeks in 1994. (*Id.* at p. 18.) In that capacity, she had no dealings with, and gained no knowledge of, HealthSouth's Medicare business, Medicare billings, or any of HealthSouth's relations with Blue Cross. She was fired from HealthSouth after she resisted the sexual advances of HealthSouth's General Counsel. (*Id.*) Plaintiff did not include her short-lived HealthSouth employment on her resume and Blue Cross employment application because her tenure there did not provide significant experience for her and was not relevant to the Blue Cross job for which she applied. Other Blue Cross employees who were assigned to fraud investigations of a particular company have previously been employed by those same companies. (*Id.* pp. 20, 21.) Therefore, claims Plaintiff, Blue Cross would nonetheless have hired her even if she had included her HealthSouth employment on her resume and application. (*Id.* at p. 20.)

For two years prior to raising an objection, HealthSouth was fully aware of Plaintiff's participation in the Blue Cross investigation. Yet, once the investigation began to cause trouble for HealthSouth, the company attempted to impede the investigation by complaining about

Plaintiff's former employment with HealthSouth. In response to this complaint, Blue Cross ostensibly discharged the Plaintiff for "resume fraud." (*Id.* at p. 21.) This articulated reason was a pretext for the conspiracy to discharge Plaintiff because of her vigorous efforts to investigate and expose the fraudulent Medicare billing practices of HealthSouth, and to further ingratiate Blue Cross with HealthSouth. (*Id.* at pp. 21, 22.)

Plaintiff points out that, in her first year on the job, she improved her department's recovery of fraudulently obtained Medicare funds by 100%. (*Id.* at p.13.) In addition, she received excellent employee performance reviews in each of the three years she was employed by Blue Cross. (*Id.*)

Since her discharge, Blue Cross has taken steps to stifle and downgrade its investigation of HealthSouth. First, Blue Cross replaced Plaintiff with a non-lawyer and effectively "gutted" its Medicare Fraud and Abuse Department. As a consequence of these actions, Blue Cross' activity in fraud investigations and recovery has fallen off drastically. Indeed, Plaintiff claims that, from 1998 through 2000, Blue Cross failed to investigate Medicare claims filed by HealthSouth. In return, HealthSouth has designated Blue Cross as the insurer for all of its employee health insurance programs nationwide. (*Id.* at pp. 17, 25.)

## II. ANALYSIS

A.   **False Claims Act.**

The False Claims Act is a fraud statute for purposes of Federal Rule of Civil Procedure 9(b). Accordingly, Plaintiff must plead her fraud claims with particularity; her complaint must "allege the details of the defendants [sic] allegedly fraudulent acts, when they occurred, and who

engaged in them." *Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 568 (11th Cir. 1994); *United States ex rel. Clausen v. Laboratory Corp. of America*, 290 F.3d 1301, 1310 (11th Cir. 2001) (noting that the plaintiff in a False Claims Act case must spell out the "facts as to time, place, and substance of the defendant's alleged fraud") (citation omitted).

Plaintiff's complaint falls short of the particularity required in False Claims Act cases. Plaintiff's twenty-nine page complaint does not identify a single allegedly false or fraudulent claim actually submitted to Medicare by HealthSouth. The complaint does not specifically allege when the fraudulent/conspiratorial acts were committed. Equally importantly, the complaint is silent on the identity of the perpetrators of the fraud and the conspirators. Accordingly, Plaintiff's complaint as it relates to the False Claims Act is due to be dismissed.

B.  **Whistle-blower Provision of the False Claims Act.**

The whistle-blower provision of the False Claims Act provides, in relevant part:

> Any <u>employee</u> who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h) (emphasis added).

Plaintiff cannot state a cause of action against HealthSouth for violation of the whistle-blower provision. That provision by its terms covers retaliatory action by <u>employers</u> of the whistle-blowers. *See Vessell v. DPS Assocs.*, 148 F.3d 407, 411-13 (4th Cir.1998); *Mruz v. Caring, Inc.*, 991 F. Supp. 701, 708-9 (D.N.J. 1998.) HealthSouth was not the Plaintiff's

employer - at least during the time period when she was discharged.

C.  **Tortious Interference With Contractual Relations.**

The complaint clearly states a *prima facie* claim for tortious interference with contractual relations. *See Colonial Bank v. Patterson*, 788 So. 2d 134, 137 (Ala. 2000). Accordingly, HealthSouth's motion with respect to the tortious interference claim is due to be denied.

### III. CONCLUSION

By separate order, the motion to dismiss will be granted as to the False Claims Act counts and denied with respect to the tortious interference claim.

Done this _11th_ day of March, 2003.

_____
Chief United States District Judge
U.W. Clemon